The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armon presiding. Good afternoon, Counsel. We'll call 4-20-0653, People of the State of Illinois v. Taiwan Bruce. Good afternoon, Counsel. For the appellant, please state your name for the record. Good afternoon, Justices. My name is Zach Pollack, P-O-L-L-A-C-K. On behalf of Mr. Bruce. Thank you. And Counsel for Appley, could you please state your name for the record? My name is David Manchin with the Appellate Prosecutor's Office on behalf of the state. Thank you. Mr. Pollack, you may proceed. Thank you. Again, good afternoon, Justices, Counsel. May it please the Court. Again, my name is Zach Pollack and I represent the appellant, Taiwan Bruce. Taiwan was found guilty by a jury in McLean County of several charges, the most significant of which was first-degree murder. The trial court sentenced him to 45 years in the Illinois Department of Corrections. In his briefs, we allege that several errors occurred in the trial court, which do entitle him to a new trial. And he requests that this honorable court vacate his convictions and remand to the trial court for a new trial. The first error that we allege involves evidence that was submitted of Taiwan being involved in a fight at the McLean County Jail with an individual named Jarell Dudley. Originally, the people sought to introduce this evidence of the fight between the two as consciousness of guilt, because Mr. Dudley was a witness to the case, and allegedly Taiwan called Mr. Dudley a snitch. Eventually, it came out that Mr. Dudley did not wish to testify, but that was on the fourth day of trial. So there's two parts to this. First is whether the trial court erred in first allowing that evidence to be admitted, and second, once the evidence was admitted and Mr. Dudley didn't testify, what were the consequences of that? Mr. Pollack, the evidence wasn't admitted. Correct. However, the foundation for the evidence was laid on the first day of trial by a correctional officer named Hitchens. He testified to Mr. Bruce being in the McLean County Jail. Which you don't complain about. Don't complain about. I think, you know, obviously the jury's going to be able to figure that out by themselves. You say in your reply brief, Taiwan does not complain about the fact that the jury knew that he was in jail for his offense. So you clearly conceded that as an issue. Sure, and I think that was in response to the appellate prosecutor's argument that the jury is smart enough to know that someone being tried for murder is probably in jail. So your complaint is that they saw that still photo of him in jail guard. Correct, as well as the testimony that identified that he was in a fight in jail. So, basically, the first part of that is whether the trial court made an error in admitting that evidence at all. And we submit that it was an error, just because the fact that Mr. Bruce called Mr. Dudley a snitch doesn't rise to the level that many of the cases involving consciousness of guilt do tend to. In those cases, specifically the ones cited. You're arguing the evidence that didn't get admitted and didn't get heard. I understand the argument about being seen on the still, being seen in jail guard. But you actually argue as a separate issue, error in the admissibility of the evidence that didn't get admitted and didn't get heard. Right. And my argument on that issue is that I get that it doesn't make a whole lot of sense because the evidence didn't get in. However, the judge's initial ruling on that evidence did allow that foundational testimony in. Well, but that's a separate issue. So I can understand raising that as an issue. Okay. The first one really doesn't, to me, honestly, just doesn't make much sense since it's not, it's nothing that came before the jury, and it wasn't heard. Right. It may be a bit duplicative of my second argument, I just do think that based on the information that the trial court had prior to allowing that to the testimony of Officer Hitchens, and that the jail video in was enough that the trial court should have rejected it outright and had the trial court rejected outright the foundation never would have been laid. Okay. Now the. And the reason we argue that is because you have a fight between an individual and another individual in jail for calling him a snitch. It really doesn't know that jury doesn't know any of that. Correct. I'm just talking about the arguments that were held in front of the trial court, this is the information that judge had prior to making his decision. I'm just suggesting that you've got a limited amount of time you might want to get to the issues that would have some significance. I will move on to just thank you. Now, as far as the accompanying argument that Taiwan's due process rights were violated. When the jury viewed the photograph of him in jail garb and heard the testimony that he was involved in a fight in jail. Now, obviously, this is again the foundational testimony, they did not hear Mr Dudley testify. But it's well established that a defendant cannot be compelled to appear in jail garb in front of a jury, because it undermines the presumption of innocence and suggest that that defendant has a propensity to commit crimes trial counsel agreed to a curative instruction. Correct. He also did object prior to the still photograph being admitted to absolutely, absolutely. I mean he he clearly objected to it. But then, when when it was brought to the court's attention by Mr Lawson that Mr Dudley was not going to testify. The court pointed out that the council had been discussing a potential curative action in the event that either the testimony would not be allowed, or in this instance the state not calling Mr Dudley as witness. The court explained the, the process asked if the defense counsel agreed and he said yes, please. Correct. Okay. Curative instruction is proposed. And once Council agrees that that's the proper way to address it. Where's the error. It's my suggestion that your creative instruction wasn't sufficient, and that Council was ineffective for essentially not asking for a mistrial at that point. I don't believe that the instruction, the curative instruction was sufficient, and I realized that most cases do say that a curative instruction given at the time of the decision that the evidence is no longer admissible typically cures that error. However, in this case, the sequence of events is on the first day of trial. You have Officer Hitchens testimony, which puts in the minds of the jury that Mr Bruce wasn't jail, and that he was involved in a fight with jail, basically showing that he does have the propensity to commit acts of violence. I think, based on the fact that the jury say that's error if we say it's error. Why would it not be harmless. I believe it's not harmless because that jury sat through three more days of testimony with the photograph that was projected on the projector in their mind, along with the knowledge that Mr Bruce was involved in a fight. They had a few other things to think about by that time. I think they had plenty of things to think about there was a ton of evidence in this case there were a ton of witnesses. But again, I think because of the proximity of the instruction being a couple days. Further away from the actual exposure. I think the current effect was lesson I think in my reply brief I cite the hall case, which suggests in a case where the evidence is close, the evidence is substantial, and there's a substantial outcome or penalty. That would come from a guilty verdict. I think that this is a similar situation. I think that the evidence was close. I realized there was a lot of it but it was all circumstantial. There were no smoking guns. No one testified that anyone pulled the trigger. A lot of it was based on statements made by the defendant as well as a very comprehensive montage of video showing a vehicle traveling around McLean County. But I do think this was a close case based on the evidence. I also think that because there was so much evidence, really, any one thing could tip the jury's verdict, and I think that we're arguing that because they had that picture right away that it wasn't their mind the whole time. Finally, there's a jury is given a curative instruction, are we to presume that they follow the court's instruction. I believe that's, that is the. That's what the case law says, okay. was in front of the jury in jail guard, and there was evidence of a fight, which again, wasn't supposed to be admitted after everything happened. I do think that the curative instruction wasn't sufficient to give Taiwan's significant due process. And I do think that that could have affected the outcome of the trial. I'd like to address a couple other arguments that were raised regarding this issue again. The appellate prosecutor suggested that Taiwan way of disarmament by finding this like case law. We decided to sell be Williams Supreme Court case and people be Wilkes, it's a fourth district case. I understand that there's not a case directly on point but this is a pretty unique set of facts, and I believe that the underlying underlying principles do suggest that in this case, there should be. There was error and that it was reversible error because of Mr. Bruce appearing in the jail guard and the evidence of his of the fight in jail. Also, I think we did a great address the fact that the defense counsel did object to the publishing of that photograph I believe the appellate prosecutor raise an argument on that. And the people do cite some cases. Regarding the in the Estelle jurisprudence. I think those cases are distinguishable because you don't have a set of facts, similar to this one, each of those cases dealt with a brief situation where a defendant is being led to a cell and handcuffs. You know, there was a case where testimony was involved where co defendants want to go visit an individual in jail. Again, there's no photographs that individual in jail. And then finally there's a case where the jury observed the defendant being led away after trial, but in that case, presumably he was in the street clothes and not jail guard. I think all those cases that did find that there was harmless air really don't apply in this case just because, again, you have at the outset of trial Mr Bruce being projected on a screen in jail guard, and you have the added effect of the fact that the jury was told that he was involved in a fight. So, as far as my ineffective assistance of counsel arguments related to the video. There is, I realized that the option of making a motion for mistrial is within the sound discretion of a trial counsel, and it's usually trial strategy. And I do realize that in this case, the trial court did say that it would not have granted a motion for mistrial in the post trial motion. However, I think in this case, bless you. It's a, it's a unique situation again, where you do have something that, you know, the trial court did use the expression the cats out of the back. I do think once the cat got out of the bag, you do have enough prejudice against Mr Bruce, that it mistrial was required in this case, and the trial counsel was ineffective for failing to make that. As far as the truck will call it, can you point out in officer Hitchens testimony where he referenced your client being involved in a fight. You are the specific reference to Mr. Officer Hitchens testimony regarding the fight, it's not explicit what it is is the state identifies, I believe it's exhibit 23, which is the disk that contain the fight. They asked, they asked Mr Hitch officer Hitchens what that was and he said, that's video of the fight that occurred that day. So that that's the only part of the record that does involve reference to that fight occurring where the jury heard it, because when, when he's asked to actually identify individuals he doesn't say anything about a fight, and the picture is not have a fight. Correct. So they don't have any way of knowing what, if or how your client was involved in today. No, then the jury has no specific information about, you know, who was involved in the fight, but I think that the fact that he's out there testifying identifying individuals and identifies that a fight happened. I think that's a reasonable jump for the jury to make that Mr Bruce was involved in a fight. And so you argue that, if I understand correctly, that the image of defendants wearing jail guard during Hitchens testimony was error shouldn't have happened is that correct. Yes. And the state argues that this is minor enough error at all it should be subject to the harmless error analysis is that correct. Correct. So my question is, in applying the harmless error analysis. Is this an instance where this court would have to be would have to conclude beyond a reasonable doubt that the error did not contribute to the verdict obtained or simply that it was harmless error. Without the need to determine it beyond the reasonable doubt. See I'm not exactly sure on that one I apologize. Well, isn't the latter applicable when we're dealing with constitutional rights such as questions of whether the right of confrontation have been violated. Yes. There's no constitutional right at issue with regards to the question for jail guard though is there. No, it's not a specific constitutional right it's due process argument. Okay, go ahead. You may continue. Thank you. I was just, I was just trying to reset myself and appreciate it. We were raised several other arguments that don't have to deal with the photo of Mr. Bruce and yoga. What is the foundation for the videos that were admitted. I recognize that the foundation for video evidence these days is very low. However, in this case, there was situations where the state didn't even know what was on the actual videos. And I think that it was error. And why wouldn't what was on the videos be evident when you see the video. I think our issue with that is the testimony that happened to lay the foundation for the videos occurred separately from the actual playing in the videos, the videos were actually shown not individually but in a montage. I believe, because it was a montage, that was not agreed to by Defense Council, the object. He did object on certain grounds, although I know back to the montage. He did not object to the full montage he he objected to specific videos in the montage for various reasons including reliability due to timekeeping issues. He did not really objected to were the ones where the times didn't match up but then what they would do is they would take a, they would take a picture of the actual time the time on the, the video to show how far the disparity might be didn't correct. Okay, and there was testimony to to to essentially sync those up produced by the state. Um, additional argument, we make is the admissibility of that Louis Vuitton belt, and the video, showing an individual holding the Louis Vuitton belt. Again, this is a unique red belt that was allegedly taken from the murder victims house. The court allowed the admission of a video that was purportedly taken from Mr. Bruce's believe it a Snapchat or Facebook of an individual holding that belt. There's any counsel acknowledge that that was taken from his phone. Yes, I'm not. Nobody disputed that that that video came off of his phone. No, the foundation was late. That it did come off his phone. However, she is that it was more prejudicial than probably because essentially you have a person holding a belt. There's no I definitely that there's no identification of the individual holding the belt. There's no caption from the Snapchat that was admitted into evidence. So, without more, I don't think that there was sufficient probative value to admit that evidence because it certainly was prejudicial, given the other testimony regarding the red belt. I think council isn't that the classic, you know, the weight of that type of evidence is for the char of fact, you've got a missing belt. You have a similar distinct belt picture taken from the suspect's phone. Correct. Yes, it can be wait however there was really no testimony regarding how unique this belt was. We didn't know how many was produced we don't know you know where it was available so without you have to when we're looking at circumstantial evidence. I think there has to, especially when you're arguing that something is unique. I do think there has to be some evidence to show that the individual item is unique. Okay. Um, are you giving up your motion to continue issue. Yeah, it's, I think it's briefed well enough. Um, I believe that, you know, with the issues with coven trial counselor clearly made the argument that because of code he wasn't allowed to fully prepare. So I do think based on you said that he had a little more difficulty talking with his client. Correct. And I think, you know, in a case that's of this magnitude with this much evidence, I do believe that difficulties with a client communicating could lead to negative outcome, based on inability to prepare. Okay, thank you Mr Paul like your time's up but you will have an opportunity to move on. Thank you, Mr mansion. May please the court counsel. In this case defendant has raised seven different issues and I will touch briefly on one ones have been discussed here today. Regarding the question of the continuous. I think the trial court decision was not an abuse discretion. The continuous was sought, primarily on grounds of coven that the attorney was afraid that code would disrupt the trial, or that there'll be unable to get enough jurors, or that the coven outbreak would require a mistrial in the middle of trial. His only complaint was that he was having more difficulty talking to his client because of code restrictions. He never made any statement that he was not prepared for trial. And the record shows that he had been the attorney for many months has sat through the trial of 20 months has sat through the trial of a codefendant, and his performance of trial did not show any kind of problems. Due to any kind of lack of preparedness so I think the court's decision to continue with with correct with request, respect to the question of the belt. The uniqueness of the belt is established by the very photograph showing that is a not your typical brown belt with a buckle. It's a very distinct type belt, and it was specifically identified by two witnesses as the belt that had been owned by the victim. That belt had been on the table. The day before the murder. The day after the murder, the belt is gone. Three days later, a photo of that belt is appears on the defendant's phone with the caption this bitch is official, I believe was the language on the photo. I think that is relevant to the question to defend his guilt and questions as to who took the photograph, or how it came to be upon the defendants phone just goes to the weight of that belt and not it's admissibility. Getting to the question of the defendant in jail clothing in the one photograph. In my recollection of the record there was no reference to a fight in other hitches testimony. If my recollection is incorrect, and counselors correct that he said that the video was of a fight. I still submit that there was no prejudice error to the defendant in the procedure used here. The trial court, never made any ruling as to the admissibility of the deadly fight he expressed the reserved ruling upon that until later, until after the defendant had been given full disclosure of everything the state had in regards to the fight, including deadly his last minute statements that the defendant called him a snitch during the fight. So to say that the. So the jury was at most told that there was a video of a fight in the jail. There for that that's to from there to lead to making the leaf that it was the defendant in the fight is a very long stretch. And when the jury is expressly told twice. First, ignore officer hitches such a testimony and ignore the testimony and ignore the photograph. Then in the final instructions they're told to ignore any evidence or exhibits that were stricken the jury is presumed to have obeyed that instruction, and that there, there is no indication that the jury ignore that instruction. In fact, the trial court. After trial defendant. Got a new attorney who raised questions of ineffective assistance of counsel, including the attorneys failure to seek a mistrial based upon the photograph when Dudley did not testify. So he was ineffective not to seek a mistrial instead of the curative instruction. But the trial court expressly ruled on that said no. The instruction was enough to correct any problems, and to indicate that there would have been no mistrial so that there can be no ineffective assistance of counsel in that regard. And no finding of prejudice should be found based upon the trial court ruling that the instruction was sufficient to cure any possible error that could have arisen just from the fact that the defendant was shown in jail guard. Defendant has conceded that the jury was likely to know he was in jail. So how is it project prejudicial for them to see a photograph of him in jail clothing, which tells them what they what he admits they already know. Plus, I think this is distinct from the cases side of other defendant, where the defendant sits through the entire trial in jail clothing I think this is more analogous to the court cases where the jury is briefly led to know that the defendant is custody is in custody by seeing him in handcuffs outside the courtroom. I think it. If this was a case where the defense was brought to the courthouse in jail clothing change clothing there, the human in court, and one or more the jury saw him being brought into the courthouse. The result. It would be more would be more analogous the cases where they see him in handcuffs. And I think this is no different than that. Plus, I don't think this seeing a picture of the defendant in custody, could have had any impact on the jury's verdict. The circumstantial evidence in this case was overwhelming as pointing to the defendant as the as being involved in this offense. You have his admissions, his statement that he planned the robbery is admission that he was there and it was supposed to be only supposed to be a robbery. You have his statement. Before he leaves the apartment, I want to rob dope averages in Dover. He then leaves with several people. One of them has a gun of the type, using the offense. The other one has access to a car, shown to be driving in the vicinity of the offense within 10 minutes the offense. So I think all the links proved him guilty. With respect to the surveillance videos. The defendant made a number of objects, I admit defense counsel made a number of objections to the videos, but he never objected on the basis of lack of foundation on the basis that each officer was required to describe what he downloaded onto the disk. That was later produced in court. The. So the lack of an objection means that on foundational grounds means that this court should find a waiver, and the trial court in making his ruling on the admissibility of the videos went through all the factors that are involved in the solid witness theory the capability to record the identification a little cow chain of custody. So there was no abuse of discretion, what the evidence showed was that the video cameras in these various locations were operating their very fact that they were able to produce videos of the street outside these bit premises. At that particular time, shows that they were working. The police explained the procedure of going to businesses located along the suspected route of the perpetrator Adam at or about the time of the murder as established by the 911 call. They downloaded that information, and the people at the various locations testified as the location of the cameras, how the cameras work, whether, whether the fact, the fact that they were depending on the location, either running all the time, or motion activated so they would only film when something moved in front of the camera. So under the silent witness theory I think the trial court properly admitted the various videos. The any at plus there's no real extreme prejudice from these businesses, showing the trail of this great camera through the neighborhood. The Defense Council expressly said that the Bloomington police videos from police cameras in the area were admissible. Those, those bit police cameras, so to speak, showed the same great camera and going through the same general area. So I have a question about the Camry and it's been seen on all these various cameras. Do any of the videos show anyone ever getting out of or getting into the camera. The, they just show the camera going through the area. They also show the camera leaving the murder scene, going the wrong way down the street. The tire tracks and the snow at the scene shows the murder vehicle shows that a vehicle left going down the wrong way. Well, your theory is that the defendant and at least one other person was in the Camry at that time. Yes. How do you explain the absence of anyone getting in or out of the Camry video, but what accounts for that. Well, there was no camera directly across the street from the either place where the defendant left or where the crime occurred, they were just videos showing the Camry in the area at shortly before and at the time of the offense. It's The evidence also showed that the tires on that Camry were changed after the date of the offense. And after photographs of tire tracks in the snow were published in the newspaper. And the type of tires that were on the Camry before the offense with the type of tires were shown to be the type of tires that would make that type of track that was in the snow outside the area of accountability. His grandmother's car, his grandmother's car, but he had access to it. The tires that were on it that matched were only five months old when they were changed from tires pictures of the tires were published in the newspaper.  Mr mentioned what you understand in the record as to when law enforcement first became aware of the vehicle is that simply parsing together the car traveling to the area or something that said we're looking for this camera. I think there was, they had talked to some witnesses, and there's. I do not recall any express testimony is how they zoomed into a great Camry before they were looking at the videos, other than the fact that they knew the time of the offense and they talked to witnesses. So presumably they had talked to some witness that had linked grandpa's gramps us to these offenses beforehand but there's nothing. No explicit testimony that I can recall as to how and why they focused on this great Camry. Other than the fact that there was testing. If I recall, this may be. I had both gramps us, and this trial so I may be mistaken me using testimony from gramps us but in the, there was, there was testimony I believe that there was little traffic at this time of day so focusing on the, on the one vehicle that you see traveling would be understandable. But as far as how they need to look at for a gray Camry. At the time they were looking at the videos. I don't think the record clearly states that. So, I think, unless the court has any other questions regarding the other issues I believe I have responded to everything adequately my brief so I will stand on my brief with respect to the any other arguments. All right, thank you counsel I see no other questions, Mr Pollack rebuttal. You're muted. I'm sorry. Can you hear me now. Yes, sir. Thank you, Your Honor. I disagree with counsel that the evidence against Mr Bruce was overwhelming. He does acknowledge that almost all the evidence in this case is circumstantial. You do have some statements by Mr Bruce indicating that he was aware of a burglary going on he was aware that some individuals stole some marijuana from the alleged victim. However, he never admitted directly to committing any sort of murder or I believe being there on that night. The Camry evidence doesn't reveal who was in the Camry. They never stopped. No one ever got out of the Camry and the windows were sufficiently tinted so that no one could observe who was in the Camry. As far as the testimony regarding the party that was held where the victim Edgerton Dover attended. There was testimony regarding not only Mr Bruce being upset about Mr. Dover not sharing marijuana there were several other individuals that express their displeasure at that issue so there clearly were more than one individual at the parties who did have an issue with Mr Dover's behavior. So I do think that, again, it's not overwhelming evidence of guilt that Mr Bruce did participate in the murder. As far as the photograph of Mr Bruce, not really having an effect on the jury. Again, I would reiterate my earlier argument that this is one of the first things that the jury saw of Mr Bruce, they learned that he was in jail guard, I again understand that they're going to figure out he's in jail, if he's awaiting trial for murder however, the very fact that it's blown up on a big screen I do think resulted in prejudice, coupled with the fact that the curative instruction wasn't given until a couple days later. With that, unless there are any questions. Again, I'll rest on my brief. All right, I see none. Thank you, counsel. Court will take this matter under advisement. Court will stand in recess.